UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAENG SEE,<br><br>                    Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>                    Defendant. | Case No. 1:21-cv-00391-ADA-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING SOCIAL SECURITY COMPLAINT**<br><br>(Docs. 24, 26)<br><br>FOURTEEN-DAY DEADLINE |

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Paeng See seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's appeal and affirming the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed applications for disability insurance benefits and supplemental security income on June 26, 2018. AR 197-200, 201-10.[2] Plaintiff alleged that she became disabled on April 15, 2011, due to a disorder of the thyroid gland, diabetes, endometriosis, colostomy care, migraines, depression, inability to sleep, heart murmur, abscess of fallopian tube, ovarian cysts, lack of social communication, lack of energy, and low self-esteem. AR 233-34. Plaintiff's applications were denied initially and on reconsideration. AR 128-32, 133-37, 138-42, 143-47. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Jennifer B. Millington issued an order denying benefits on August 27, 2020. AR 20-33, 39-61. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ Millington's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### **Hearing Testimony**

ALJ Millington held a telephonic hearing on June 18, 2020. Plaintiff appeared without a representative, but her niece, Mala See, appeared and testified. AR 44. William Tysdal, an impartial vocational expert, also appeared and testified. AR 55.

At the outset of the hearing, the ALJ provided Plaintiff with the definition of disability. The ALJ also reviewed Plaintiff's right to representation, stating:

> You do have the right to be represented and you can be represented by an attorney or a non-attorney and they can help you get information about your case and explain medical and legal terms and come with you or attend the hearing. [¶] There are some representatives that don't charge a fee, but most charge on a contingency basis, which means they charge you only if you win your case, and then their payment comes directly from Social Security out of any past-due benefits that you're owed.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

AR 43. Plaintiff elected to proceed "[w]ithout a representative." AR 43, 45.

In response to questions from the ALJ, Plaintiff testified that she completed the 12th grade in the United States. AR 46. She last worked part-time in 2005 and 2006 in food service, packing food in containers. AR 46-47.

Plaintiff testified that after surgery in 2017 she had trouble sleeping. She is depressed because they said they were going to reverse her colostomy, but she still has it, and it has been three years already. She does not feel normal. Instead, she feels weak and stressed, tired with no energy. AR 48. She does not go out much because of the bag. She is embarrassed. AR 49. She has to change the bag five times from 7:00 a.m. until noon, and it takes about 30 minutes. AR 59-60.

Plaintiff lives with her husband and kids. On a typical day, she just lies in bed in her room. AR 49. Her husband and older kids now do the caregiving and cleaning. She is not able to do any cooking, because her hands get tired. She has trouble standing for periods of time because she gets dizzy and weak. She has anemia. She does drive, but she does not go alone or far. She takes her son in case she is faint or has a migraine. AR 49-50.

Plaintiff testified that she has migraines three to four times every two weeks. They last all day, and she just lies in bed and takes medications. AR 50-51. She thinks her depression is because of lack of sleep. She also has nightmares. She takes medication for her diabetes, but ran out of her thyroid medication. AR 51-52.

Following Plaintiff's testimony, Mala See also testified. AR 52. Ms. See confirmed hearing Plaintiff's testimony and offered additional information. She reported that Plaintiff's bag always needs changing and always smells. Plaintiff tries to change it, but her husband helps most of the time. Ms. See does not live with Plaintiff but tries to see her often to keep her company. Plaintiff's husband usually does everything. AR 52-53.

Ms. See did not think Plaintiff could do a sedentary job where she sat at a desk. She explained that Plaintiff would not feel comfortable around people, she feels embarrassed physically and emotionally. The doctors keep holding off on reversing the colostomy. Plaintiff also does not want to be intimate because she feels embarrassed. Her husband and kids do everything. Additionally,

Plaintiff's vision and memory are worse. Plaintiff has to be reminded to brush her hair and shower. She just wants to stay in her room. AR 53-55.

Following Ms. See's testimony, the ALJ elicited testimony from the VE. The VE characterized Plaintiff's past work as deli counter worker. The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to consider a person limited to light work activity who could frequently climb, kneel, and crawl, but only occasionally stoop and crouch, have only occasional exposure to hazards, and would be limited to simple, routine tasks with only occasional work interactions with the public. The VE testified that Plaintiff's past work would not be possible, but there would be other jobs for a younger individual with a high school education, such as cleaner-housekeeping, merchandise marker, and collator operator. AR 57-58.

If the person could stand and walk only two hours in an eight-hour day, those other jobs would not be possible. There would be other jobs, such as touch-up screener, addressing clerk, and document preparer. AR 58-59. If someone had to spend more than 10 to 15 minutes per hour off task to change their colostomy bag, it would not be consistent with any of the sedentary or light jobs. AR. 60.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 23-33. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 15, 2011, her alleged onset date. AR 21. The ALJ identified the following severe impairments since 2017: diabetes mellitus type II, post-procedural hypothyroidism, Grave's disease, iron deficiency, anemia, atrial fibrillation, residuals from surgery to remove ovarian abscess/pelvic mass and small bowel resection with diverting colostomy, headaches, and depressive disorder. AR 26. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 26-27.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except she could frequently climb, kneel, and crawl and occasionally stoop and crouch. She could have only occasional exposure to hazards and was limited to simple, routine tasks with occasional work interactions with the public. AR 27-31. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but there were jobs in the national economy that Plaintiff could perform. AR 32-33. The ALJ therefore concluded that Plaintiff had not been under a disability at any time from April 15, 2011, through the date of the decision. AR 33.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

## **DISCUSSION**[3]

Plaintiff argues that she did not intelligently or knowingly waive her right to representation given her severe mental impairments and she was prejudiced as a result by the inability to develop the issues surrounding her colostomy and colostomy bag. (Doc. 24 at pp. 10-14.)

**A.  Waiver of Counsel**

Plaintiff first argues that she was "prejudiced by her 'unknowing' and 'unintelligent' waiver of her right to counsel, as the ALJ found there is substantial evidence of record that [Plaintiff] suffered from severe psychological impairments." (*Id.* at p. 10.) In particular, Plaintiff complains that while the ALJ informed Plaintiff of her right to representation at the hearing, the ALJ failed to explain the manner in which an attorney could aid her with the proceedings, the difference between the role of Plaintiff's niece and the role of an attorney, the fee process, and the 25% fee cap. (*Id.* at pp. 12-13.)

With regard to representation, under 42 U.S.C. § 406(c), the Commissioner of Social Security is required to "notify each claimant in writing . . . of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security," with such notification also advising "the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." The Ninth Circuit does not require additional disclosures other than those set forth in § 406(c). *See Roberts v. Comm'r of Soc. Sec. Admin.*, 644 F.3d 931, 933-34 (9th Cir. 2011); *Moreno v. Comm'r of Soc. Sec.*, No. 1:11-cv-00377-EPG, 2023 WL 1930960, at *1 (E.D. Cal Feb. 10, 2023).

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

In this case, the record reflects that the Commissioner of Social Security advised Plaintiff in writing of her right to an attorney and the availability of free legal services on multiple occasions. AR 131, 136, 141, 146, 156, 159-64, 177-78. In a letter explaining the hearing process, the Commissioner of Social Security included a document informing Plaintiff that she could have an attorney represent her, that the attorney could not charge more than the fee amount approved by the agency, and that some organizations provide free legal services. The document also included a list of organizations that could help her find a representative. AR 159-64. The subsequent Notice of Hearing also informed Plaintiff that she could have an attorney represent her, that the attorney could not charge more than the fee amount approved by the agency, and that some organizations provide free legal services. AR 177-78. There is no assertion that Plaintiff failed to receive these written notices and Plaintiff signed an acknowledgement that she received the Notice of Hearing. AR 190.

In addition to the written notices, the agency contacted Plaintiff by telephone prior to the hearing and provided her with information regarding the right to representation. AR 192. Plaintiff reportedly stated that she did "not intend to look for representative, but is hoping to have a family member at the hearing." AR 192. Further, at the hearing, the ALJ advised Plaintiff of her right to representation, explaining that an attorney could help her get information about her case, explain medical and legal terms, and attend the hearing. The ALJ also advised Plaintiff that some representatives do not charge a fee. AR 43.

Because the record demonstrates that the Commissioner of Social Security advised Plaintiff of her right to counsel and the availability of organizations that provide legal services free of charge both in writing and by telephone, and the ALJ further advised her at the hearing, the Court finds the requirements of § 406(c) were met.

Plaintiff contends, however, that she suffered from mental impairments that rendered her unable to intelligently and knowingly waive her right to representation. (Doc. 24 at p. 10.) In support, Plaintiff cites the mental status examinations completed by Roger A. Izzi, Ph.D. and Mary K. McDonald, Ph.D. (*Id.* at pp. 10-11.) These examinations do not support Plaintiff's argument and there is no evidence that Plaintiff was incapable of providing an informed waiver. Rather, the examinations show lack of effort and cooperation, along with possible malingering. For instance, Dr.

7

Izzi completed a consultative psychiatric examination on September 25, 2017.  AR 312-15.  During the examination, Plaintiff "kept asking for medication to sleep."  AR 314.  Dr. Izzi noted that Plaintiff "was somewhat vague in responding" and "performed poorly on mental status examination," unable to count backwards from 10 or calculate 10 minus 6 correctly.  AR 314.  The ALJ indicated that these statements by Dr. Izzi implied that Plaintiff "was not giving her best effort and/or malingering."  AR 29.

Similarly, Dr. McDonald completed a consultative psychological evaluation on March 5, 2019, and repeatedly noted that Plaintiff was not cooperative or provided no effort during the examination.  For example, Dr. McDonald noted that Plaintiff's presentation "was uncooperative."  AR 1035.  Plaintiff's "[m]emory for recent and long-term events was variable but appeared to be more of an issue of cooperation than ability."  AR 1035.  On the Wechsler Memory Scale, IV Edition, Plaintiff "would not cooperate" and she "quit making any effort on verbal paired associates so that it could not be scored."  AR 1037.  Further, on the Wechsler Adult Intelligence Scale, IV Edition, Plaintiff's performance "was significantly impaired but there was no effort."  AR 1037.  Dr. McDonald suspected that Plaintiff was "untruthful with the evaluation" and diagnosed "Malingering Cognitive Deficit."  AR 1038.  Dr. McDonald found no impairment in Plaintiff's ability to understand and remember both very short and simple instructions and to understand and remember detailed instructions.  AR 1038-39.

The remaining treatment notes referenced by Plaintiff regarding her depression do not demonstrate a comprehension deficit.  (Doc. 24 at pp. 11-12.)  Furthermore, the record reflects that Plaintiff completed the 12th grade in the United States, she could read and understand English, she did not attend special education classes, and she did not require an interpreter at the hearing.  AR 46, 232, 234.

**B.  Duty to Develop the Record**

Plaintiff next argues that she was prejudiced by the lack of representation at the hearing and the ALJ had a duty to further develop the record regarding her colostomy and maintenance of her colostomy bag.  (Doc. 24 at p. 14-15.)

1    An ALJ has a duty to develop the record for represented and unrepresented claimants, with the
2 duty being "heightened where the claimant may be mentally ill and thus unable to protect her own
3 interests." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "An ALJ's duty to develop the
4 record further is triggered only when there is ambiguous evidence or when the record is inadequate to
5 allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir.
6 2001).

7    The Court does not find that the evidence regarding Plaintiff's colostomy and colostomy
8 maintenance was inadequate or ambiguous, triggering a duty to develop the record. At the hearing,
9 the ALJ asked about reversal of Plaintiff's colostomy and any difficulties that Plaintiff had with going
10 to the bathroom. AR 48-49. Plaintiff testified regarding her embarrassment surrounding the
11 colostomy-related smell. AR 49. Additionally, Plaintiff's niece testified regarding the changing of
12 Plaintiff's colostomy bag, with Plaintiff's husband helping most of the time, and the various reasons
13 the doctors had given for not reversing the colostomy. AR 53-54. The ALJ also specifically asked
14 Plaintiff about the time spent changing her colostomy bag, with Plaintiff explaining that she changes it
15 five times from 7:00 in the morning till noon, that her husband helps her, and it usually takes 30
16 minutes. AR 59-60. The ALJ then included the amount of time spent changing the colostomy bag in
17 a hypothetical to the VE. AR 60.

18    In addition to evidence elicited at the hearing, the ALJ also considered treatment records
19 regarding Plaintiff's colostomy and colostomy maintenance. For instance, after Plaintiff's diverting
20 colostomy in April 2017, the ALJ noted that treatment records from July 2017 showed that the
21 colostomy was managed by Plaintiff and her ostomy was unremarkable. AR 28, 29, 364, 410 ("Pt has
22 been managing her colostomy herself and supplies are sent to her home"). In August 2018, Plaintiff's
23 ostomy remained stable. AR 29, 956.

24    As an additional argument, Plaintiff claims that the ALJ erred in failing to provide reasons for
25 discounting Plaintiff's testimony concerning the amount of time spent maintaining the colostomy bag.
26 (Doc. 24 at p. 17.) However, the ALJ discounted Plaintiff's symptom testimony as inconsistent with
27 the medical evidence. As indicated above, the medical evidence demonstrated that Plaintiff, not her

28

9

husband, managed her colostomy. There was no report or other indication in the treatment records regarding difficulties or issues associated with colostomy maintenance.

Plaintiff also argues that there is evidence that she was prejudiced by the lack of representation because she did not understand the role or the function of the VE. (Doc. 24 at p. 13.) Plaintiff claims that she "was apparently confused by the ALJ addressing the VE in the first place and did know why the VE was there." (*Id.*) According to the record, at the conclusion of testimony from Plaintiff's niece, the ALJ explained that he was going to ask some questions of the vocational expert. AR 55. When the ALJ directed the VE to raise his right hand to be sworn in, Plaintiff responded "Yes." AR 55. The ALJ then indicated that he was talking to the vocational expert. AR 55. There is no indication from the record that Plaintiff was confused and did not know why the VE was there.

Plaintiff also claims that the ALJ never provided her with the opportunity to object to the VE's qualifications or to question the VE. (Doc. 24 at p. 13.) However, Plaintiff offers no authority to show that this is required. *Moreno v. Comm'r of Soc. Sec.*, No. 1:22-CV-00377-EPG, 2023 WL 1930960, at *3 (E.D. Cal. Feb. 10, 2023) (discussing lack of authority; finding that the ALJ's failure to explicitly advise plaintiff orally at the hearing of her right to question the VE did not trigger a duty to further develop the record). Plaintiff's citation to *Vidal v. Harris*, 637 F.2d 710 (9th Cir. 1981) is not persuasive and the facts of *Vidal* are distinguishable. In *Vidal*, the plaintiff suffered from borderline mental retardation, completed only ten grades of school in the "slow" track, and could not read well. *Id.* at 711. Here, however, there is no evidence demonstrating that Plaintiff suffered from the same type of mental deficit. Plaintiff completed high school, did not take special education classes and there was no evidence that she could not read or understand English well.

Additionally, the ALJ offered Plaintiff an opportunity to ask any questions. According to the record, after the ALJ finished questioning the VE, he informed Plaintiff that he was going to look over all the evidence and get her a written decisions as soon as he could. The ALJ then asked Plaintiff, "Do you have any questions before we hang up this morning?" AR 60. Plaintiff responded by asking, "Will it be mailed or calling?" AR 60. To which the ALJ responded, "Yeah, we would mail it in just the regular mail." AR 60. In this exchange, the ALJ did not expressly advise Plaintiff that she had the opportunity to question the VE. Nevertheless, Plaintiff was advised in writing before the hearing

that "a vocational expert" would appear at the hearing, she would be able to "communicate with the expert," and she would be able to "question witnesses." AR 174.  Furthermore, Plaintiff does not identify any objections to the VE's qualifications or any questions that she would have posited to the VE had she been represented at the hearing.  As noted above, the ALJ included Plaintiff's alleged limits from the colostomy in a hypothetical to the VE.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.

Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and
2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Paeng See.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 23, 2023**          /s/ Barbara A. McAuliffe
                                      UNITED STATES MAGISTRATE JUDGE